ORIGINAL

# In the United States Court of Federal Claims

No. 15-380T
(Filed: March 20, 2017)

FILED
MAR 20 2017
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ANTHONY J. KISELIS, | Tax Refund Suit; Valid Tax Return; Valid Refund Claim; 28 U.S.C. § 1346; 26 U.S.C. § 7422; 26 U.S.C. § 6511(b)(2)(A); "Look Back" Provision. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Anthony J. Kiselis, Amsterdam, New York, pro se.

Caroline D. Ciraolo, David I. Pincus, Mary M. Abate, and Margaret E. Sheer, U.S. Department of Justice, Tax Division, Court of Federal Claims Section, P.O. Box 26 Ben Franklin Station, Washington, D.C., 20044, for Defendant.

## OPINION AND ORDER OF DISMISSAL

**Williams**, Judge.

In this tax refund action Plaintiff pro se[1] seeks the return of $46,697.17 levied by the Internal Revenue Service ("IRS") to satisfy Plaintiff's tax liability for the year 2000.[2] This matter comes before the Court on Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) or 12(b)(6).

---

[1] During the oral argument held on September 13, 2016, Plaintiff requested that his pro se designation be stricken. Tr. 4 (Sept. 13, 2016). The Court denied Plaintiff's request. Id. Although Plaintiff is an attorney, he is representing himself in this matter and is not admitted to practice before this Court.

[2] Plaintiff also seeks $500,000 without articulating a basis for recovery.

7014 1200 0000 9093 6934

Because Plaintiff failed to submit a valid refund claim to the IRS, this Court lacks jurisdiction over Plaintiff's suit, and Defendant's motion to dismiss is granted.

### Background[3]

On September 8, 2005, because Plaintiff had not yet filed a tax return for the year 2000, the IRS prepared a substitute federal tax return ("Substitute for Return" or "SFR") for Plaintiff for that year. When a taxpayer does not file a tax return, Section 6020(b) of the Internal Revenue Code permits the IRS to execute a SFR in order to determine the taxpayer's liability. The statute provides in part:

> (b) Execution of Return by Secretary. –
> (1) Authority of Secretary to execute return. – If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor . . . , the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
>
> (2) Status of returns. – Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

26 U.S.C. § 6020(b) (2012).

The following third parties had provided the IRS with information regarding Plaintiff's income for the 2000 tax year:

- Dean Witter Reynolds (Form 5498, Form 1099-B, Form 1099-DIV, Form 1099-R);

- GMAC Mortgage (Form 1098);

- Fidelity Investments (Form 1099-R);

- Lasalle Bank (Form 1099-INT);

- Merrill Lynch Pierce Fenner & Smith (Forms 1099-DIV);

- Morgan Stanley Dean Witter (Forms 1099-B, Forms 1099-DIV);

- Williams & Montgomery Ltd., Profit Sharing Plan & Trust (Form 1099-R);

---

[3] This background is derived from Plaintiff's complaint, exhibits to Defendant's motion to dismiss and exhibits to Defendant's supplemental brief.

- Zurich Money Market Fund (Form 1099-DIV);

- Anthony Suizzo (Form 1099-MISC); and

- Wexford Clearing Services Corp. (Form 1099-DIV)

Def.'s Mot. Ex. 2.

The SFR indicated the following regarding Plaintiff's income and tax liability:

- gross income of $429,128.00 (comprised of distributions reported by Plaintiff's employer and by various financial entities and Plaintiff's self-employment income);

- taxable income of $424,016.50;

- tax liability of $147,003.00;

- interest (calculated through October 9, 2005) of $51,170.57; and

- penalties of $77,732.79.

See Def.'s Mot. Ex. 5, at 68.

On September 19, 2005, the IRS sent Letter 2566 - Proposed Individual Tax Assessment - to Plaintiff's last known address. Id. at 66-72. In the Letter, the IRS informed Plaintiff that it had no record of receiving Plaintiff's Form 1040, U.S. Individual Income Tax Return, for the 2000 tax year and that, as a result, the IRS had determined Plaintiff's tax liability as of that date to be $275,906.36. Id. at 66, 68. The Letter further stated that because the IRS computed Plaintiff's tax liability based solely on income, it would be to Plaintiff's advantage to file his return "so that [he could] claim all of the exemptions, deductions, and credits that the law allows." Id. at 66. Finally, the letter informed Plaintiff that within 30 days, the IRS had to receive one of the following:

1. Plaintiff's Form 1040 completed and signed, including all schedules and forms, with the cover letter;

2. The "Consent to Assessment and Collection" form signed and dated;

3. A statement explaining why Plaintiff believed he was not required to file, or information Plaintiff wanted the IRS to consider; or

4. Plaintiff's appeal of the IRS's proposed assessment.

Id.

Plaintiff did not respond to the letter, and on December 12, 2005, the IRS sent Plaintiff a Notice of Deficiency via certified mail to Plaintiff's last known address. The IRS advised Plaintiff that it had assessed a $147,003.00 deficiency and had imposed $77,732.79 in penalties based on the SFR. Def.'s Mot. Ex. 1, at 6. The Notice gave Plaintiff 90 days to contest the deficiency determination in Tax Court or face a deficiency assessment. Id.

On May 8, 2006, the IRS assessed additional tax, interest and penalties for Plaintiff's 2000 tax year to account for additional interest and penalties that had accrued since the IRS issued Plaintiff the Notice of Deficiency -- a $33,075.67 late filing penalty, $60,343.85 in interest, and a $36,750.75 failure-to-pay tax penalty. Def.'s Mot. Ex. 4, at 57, 63.

Over three years later, on June 26, 2009, after searching without success for Plaintiff's address, the IRS sent Plaintiff Letter 1058, "Final Notice Reply Within 30 days" to Plaintiff's last known address, informing Plaintiff of his unpaid taxes and the IRS's intent to levy his accounts if Plaintiff did not pay the tax or request an appeal within 30 days. Def.'s Mot. Ex. 3, at 18-20 (Archive History Transcript), Ex. 4, at 58.[4]

On August 13, 2009, over 30 days after Plaintiff was sent the Final Notice, the IRS issued a levy against Plaintiff's Bank of America account in the amount of $46,700.00. Def.'s Mot. Ex. 3, at 20.[5] Form 668A – Notice of Levy provides banks must hold money for 21 calendar days before sending the funds to the IRS. On August 19, 2009, the Revenue Officer again conducted a search for Plaintiff's contact information, but was unsuccessful. Id.

On August 28, 2009, Plaintiff contacted the Revenue Officer by telephone inquiring about the levy on his Bank of America account. Id. at 21. At that time, Bank of America had not yet sent the monies levied from Plaintiff's account to the IRS. During the conversation, Plaintiff provided the Revenue Officer with his updated contact information. Id. The Revenue Officer informed Plaintiff that the levy on his bank account would only be released if Plaintiff submitted income tax returns for tax years 2000 through 2007 - - which Plaintiff had not done. Plaintiff objected and requested his case be transferred to New York. Id. at 21. Plaintiff also informed the Revenue Officer that "when in Chicago, Illinois, back a few years, he [had been] beaten up by a

---

[4] The IRS must give a taxpayer notice at least 30 days prior to executing a levy, "in person, ... left at the [person's] dwelling or usual place of business . . . [,] or sent by certified or registered mail to the person's last known address." 26 U.S.C. § 6331(d)(2). The statute does not require that Plaintiff receive or accept the notifications - - the IRS need only mail the notice by certified or registered mail to the plaintiff's last known address. Smith v. Rossotte, 250 F. Supp. 2d 1266, 1270 (D. Or. 2003) (citing Williams v. Comm'n Internal Revenue Serv., 935 F.2d 1066, 1067 (9th Cir. 1991)).

The Advisory Revenue Officer, LuAnn J. Bondanza, testified that a copy of Letter 1058, could not be located, but the Archive Transcript of Plaintiff's tax history indicates that the IRS sent the notice. Bondanza Suppl. Decl. ¶ 5(a) (Oct. 12, 2006); Def.'s Mot. Ex. 3, at 18.

[5] Although Ms. Bondanza testified that the IRS has not been able to locate a copy of the Notice of Levy that was sent to Plaintiff, the Archive Transcript of Plaintiff's tax history indicates that the IRS sent the notice. Bondanza Suppl. Decl. ¶ 5(b); Def.'s Mot. Ex. 3, at 20.

drug guy and is now involved in litigation and [would] have to stay in a homeless shelter in September if the IRS steals his money." Id. (Revenue Officer notes in archived transcript).

On September 8, 2009, Plaintiff's Power of Attorney "POA" representative, Tax Masters, contacted the IRS and asked if the levy on Plaintiff's account could be released. Def.'s Mot. Ex. 3, at 22. The IRS informed Tax Masters, as it had informed Plaintiff, that the levy would not be released until Plaintiff provided tax returns for tax years 2000 through 2007, to the assigned Revenue Officer. Id. According to Tax Masters, Plaintiff's income from 2000 consisted of an IRA rollover that was not taxable and proceeds from the sale of stock sold at a loss. Id. The IRS directed Tax Masters to discuss Plaintiff's case with the assigned Revenue Officer. Id.

A week later, on September 15, 2009, pursuant to the levy, the IRS secured $46,697.17 from Plaintiff's Bank of America account. Id. at 24. The IRS allocated the funds to Plaintiff's outstanding tax liabilities for 2000, 2001 and 2002, -- in particular $23,679.17, in satisfaction of Plaintiff's liability for tax year 2000. Neither Plaintiff nor Tax Masters requested Forms 1040 or supplied the IRS with information about Plaintiff's income or expenses for tax year 2000. Id.

On September 23, 2009, at Plaintiff's request, the IRS reassigned his case from its Chicago office to its Albany, New York office. Def.'s Mot. Ex. 3, at 26, 30, 47. As of January 29, 2010, Plaintiff was current with filing his tax returns for years 2003 through 2008, but his only returns for years 2000 through 2002 were SFRs. Id. at 29. Upon reconsideration of the 2001 and 2002 SFRs, the IRS determined that Plaintiff had a zero balance for those years, but still owed a "large" balance for the 2000 tax year. Id. at 29, 30.

**Offer in Compromise and Dealings with the IRS**

Plaintiff filed a proposed offer in compromise of $5,000 on Form 656 "Doubt as to Collectibility," and, on February 9, 2010, Plaintiff submitted a partial payment to the IRS of $1,150. Def.'s Mot. Ex. 4, at 59; Def.'s Suppl. Br. Ex. 10, at 85. On October 19, 2010, the IRS rejected Plaintiff's offer in compromise, because it calculated that the "reasonable collection potential" from Plaintiff was $87,680.77, "based solely on equity in assets that included $50 in bank account[,] $46,409.77 value of retirement account with Morgan Stanley, and a dissipated asset (a house) valued at $41,221." Def.'s Suppl. Br. Ex. 10, at 85-86. On November 15, 2010, Plaintiff timely filed an appeal of this rejection and requested a conference with an Appeals Officer. Id. at 85.

On May 10, 2011, an IRS Appeals Officer held a conference with Plaintiff, and Plaintiff asserted that he did not have an ownership interest in the house. Id. at 87. On May 23, 2011, Plaintiff faxed the Appeals Officer an affidavit from his mother representing that she, not Plaintiff, owned the house. Id. The Appeals Officer determined that this was insufficient to "reverse[] Compliance determination of dissipated asset." Id. On May 23, 2011, the Appeals Officer sustained the rejection of Plaintiff's offer in compromise based on the equity value of Plaintiff's assets and terminated Plaintiff's offer in compromise. Id. at 87-88.

On November 16, 2011, the IRS's Office of the Taxpayer Advocate in Albany, New York received an application for a taxpayer assistance order from Plaintiff. Def.'s Mot. Ex. 3, at 40.[6] By March 8, 2012, the IRS had the authority to levy Plaintiff's Morgan Stanley account because Plaintiff's outstanding tax liability for the year 2000 had not been satisfied by the funds levied from Plaintiff's Bank of America account. Id. at 43-44. However, the IRS suspended such activity after consulting the Albany Taxpayer Advocate's Office. Id. at 44. Because Plaintiff represented that he had no income, the Albany Taxpayer Advocate's Office requested that Plaintiff file a zero tax return for tax year 2000 by September 10, 2012. Id. at 45. When Plaintiff still had not filed a tax return for 2000 as of September 10, 2012, the Albany Taxpayer Advocate's office closed Plaintiff's case. Id.

On October 16, 2012, Plaintiff sent a letter regarding his case to National Taxpayer Advocate, Nina Olson. Id. at 47. On December 3, 2012, following consultation between the National and the Albany Taxpayer Advocate's Offices, the Albany Taxpayer Advocate sent a letter to Plaintiff that his file with the Albany office would not be reopened because he failed to submit an original year 2000 tax return. Id. at 49. In this letter to Plaintiff, the Albany Taxpayer Advocate told Plaintiff that it had informed the Revenue Officer that the collection action against Plaintiff could resume. Id. As a result, on January 8, 2013, the IRS issued a levy notice to Morgan Stanley, and on March 18, 2013, secured a levy on Plaintiff's Morgan Stanley account totaling $92,955.90 to satisfy Plaintiff's outstanding liability for the 2000 tax year. Id. at 51-52.

Two days after the levy on Plaintiff's Morgan Stanley account was secured, on March 20, 2013, Plaintiff met with the Revenue Officer in Albany, New York and informed her that he had filed a Form 1040 for the 2000 tax year with the IRS office in New York, New York. Id. at 53. The Revenue Officer confirmed that Plaintiff's 2000 tax return had been received by the IRS office in New York on January 9, 2013. See Def.'s Mot. Ex. 6, at 73; Compl. Ex. A, at 1. In his Form 1040, Plaintiff reported an adjusted gross income of $800, sought a refund of $46,617.17, and represented that he owed no payments to the IRS. Id. at 74. However, the Revenue Officer informed Plaintiff that, regardless of whether his tax return was accepted, he could not be refunded the $46,670.17, as that refund claim was barred under the "3 year statute for refunds." Def.'s Mot. Ex. 3, at 53.

On April 24, 2013, the IRS denied Plaintiff's claim for refund, contained in his January 8, 2013 tax return. Compl. Ex. A, at 1. On July 18, 2013, the IRS Office of Appeals upheld that determination. Id. The IRS treated Plaintiff's tax return for tax year 2000 that it received on January 9, 2013, as a refund claim for $46,679.17, but determined on appeal that there was "no basis to allow any part of [that] claim." Id.

The IRS ultimately made no determination on the validity of Plaintiff's 2000 tax return. However, the IRS abated the entirety of the tax, interest and penalties assessed under the SFR, and

---

[6] The Office of the Taxpayer Advocate has the authority to issue a taxpayer assistance order if the assigned advocate determines that "the taxpayer is suffering or is about to suffer a significant hardship as a result of the manner in which the internal revenue laws are being administered by the Secretary [of the Treasury]." 26 U.S.C. § 7811(a).

issued Plaintiff a refund of $98,229.79 which included the $92,955.90 that had been levied from Morgan Stanley to satisfy Plaintiff's outstanding liability for the 2000 tax year. The IRS also refunded Plaintiff the $1,150 received as part of the terminated offer in compromise, and $4,123.89 in interest on the returned funds levied from Plaintiff's Morgan Stanley account. Compl. Exs. A, B. The IRS did not refund the $46,697.17 that was levied from Plaintiff's Bank of America account on September 9, 2009.

## Discussion

### Jurisdiction

Concurrent with the district courts of the United States, the United States Court of Federal Claims has jurisdiction over actions against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a) (2013); Ishler v. United States, 115 Fed. Cl. 530, 534 (2014). "In the context of tax refund suits, the United States sovereign immunity is construed narrowly and jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code . . . ." Waltner v. United States, 679 F.3d 1329, 1332 (Fed. Cir. 2012). "Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions. The first is § 7422(a) . . . ." United States v. Dalm, 494 U.S. 596, 601 (1990). If a taxpayer fails to file a claim for refund with the IRS, sovereign immunity has not been waived, and the Court of Federal Claims does not have jurisdiction. See Waltner, 679 F.3d at 1333.

Plaintiff has the burden of establishing subject-matter jurisdiction in this Court. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The Court must dismiss the action if it finds subject-matter jurisdiction to be lacking. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007).

### The Court Lacks Jurisdiction Over Plaintiff's Action

To establish jurisdiction, Plaintiff must establish that he filed an administrative refund claim with the IRS prior to filing suit in this Court. 26 U.S.C. § 7422. The statute provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assed or collected . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of the law . . . and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422. Thus, "Section 7422(a) . . . imposes, as a jurisdictional prerequisite to a refund suit, filing a refund claim with the IRS that complies with IRS regulations." Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994) (citing Burlington N., Inc. v. United States, 684 F.2d 866, 868 (Ct. Cl. 1982)).

7

On January 9, 2013, Plaintiff filed a tax return for the 2000 tax year, which contained a claim for a refund.[7] To constitute an administrative claim for refund, the tax return must satisfy 26 C.F.R. § 301.6402-3(a)(5). Waltner, 679 F.3d at 1333. Section 301.6402-3(a) provides that "a properly executed individual . . . original income tax return or amended return shall constitute a claim for refund or credit . . . if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer." Id. (quoting 26 C.F.R. § 301.6402-3(a)(5)) (emphasis added). Additionally, for a return to constitute a refund claim it "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof . . ." Waltner, 679 F.3d at 1333 (quoting 26 C.F.R. § 301.6402-3(b)(1)). In short, "to be a valid return for purposes of a refund claim, the return must contain sufficient data to allow calculation of tax." Waltner, 679 F.3d at 1333.

Plaintiff's tax return, filed January 9, 2013, failed to comport with the Treasury Regulation and cannot be considered valid. In his 2000 tax return and claim for refund, Plaintiff reported $800 of gross income from interest and ordinary dividends and nearly $50,000 in business expenses, and requested a refund of $46,679.17. Although nine financial institutions provided the IRS with information relating to Plaintiff's investment income for 2000, Plaintiff failed to attach a Schedule D. Plaintiff provided no information regarding distributions from third-party financial institutions. By filing such an incomplete return and failing to attach a Schedule D, Plaintiff failed to include sufficient data for the IRS to calculate his tax liability as required by the Treasury Regulation. See Waltner, 679 F.3d at 1333 (stating that "forms that lack essential information . . . are not tax returns within the meaning of the Internal Revenue Code and thus cannot serve as a basis for a tax refund suit"); see also Kehmeier v. United States, 95 Fed. Cl. 442, 445-46 (2010). "[I]t is not enough for a form to contain some income information required by the tax code." United States v. Moore, 627 F.2d 830, 835 (7th Cir. 1980); see also Diamond, 107 Fed. Cl. 702, 705-06 (2012), aff'd per curiam, 530 F. App'x 943 (Fed. Cir. 2013) ("A properly executed return must contain a recital of income; without such essential information, the IRS cannot calculate the tax or refund owed upon the return.").[8]

---

[7]   The SFR the IRS prepared for Plaintiff for the 2000 tax year did not qualify as a tax return because Plaintiff did not sign the SFR as required under § 6020, and an unsigned SFR does not constitute a return for purposes of § 6511(a). As such, Plaintiff was still required to file a return. See Healer v. Comm'r of Internal Revenue, 115 T.C. 316, 322-23 (2000); see also Tiernan v. United States, 113 Fed. Cl. 528, 530 n.2 (2013) (noting that where the IRS prepared SFRs that were not later signed by plaintiff in accordance with § 6020(a), no return had been filed for purposes of § 6511).

[8]   Plaintiff appears to contend that the IRS' acceptance of his return rendered it valid. Plaintiff testified in an affidavit that he was first told that he needed to file a Year 2000 tax return "in about November, 2012," and that, following this instruction, he "forthwith prepared the Form in perfect form, signed it, dated it, and filed it; and the IRS accepted it as good; valid; and efficacious." Kiselis Aff. ¶ 11 (Dec. 5, 2016). Contrary to Plaintiff's assumption, the IRS' mere acceptance of Plaintiff's 2000 tax return neither cures the return's deficiencies nor establishes its validity. Plaintiff does not address his failure to attach a Schedule D to his tax return and does not

The fact that the IRS may have been able to piece together what Plaintiff should have reported in a Schedule D using the Forms 1099 submitted by financial institutions does not render Plaintiff's tax return valid. Plaintiff was obligated to provide that financial information to the IRS in his return. As the Supreme Court recognized in Angelus Milling Co. v. Commissioner:

> [I]t is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund. The protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim.

325 U.S. 293, 299 (1945).

In addition, to be a valid tax return for purposes of a refund claim, the return must "evince[] an honest and genuine endeavor to satisfy the law." Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934); Waltner, 679 F.3d at 1334; Moore, 627 F.2d at 835. As the Court has recognized, it is not enough that a tax return "contain some income information," rather, there must also be an "honest and reasonable intent to supply the information required by the tax code." Kehmeier, 95 Fed. Cl. at 445 (quoting Moore, 627 F.2d at 835). Here, Plaintiff was aware of the tax liability the IRS had assessed based on distributions reported by third-party financial institutions, but failed to report this on his Form 1040. As such, Plaintiff failed to exhibit an honest and reasonable intent to provide the requisite information. Because the Form 1040 Plaintiff submitted to the IRS does not constitute a valid return, Plaintiff did not submit a proper refund claim to the IRS, and this Court lacks jurisdiction. See Waltner, 679 F.3d at 1334.[9]

Plaintiff also seeks recovery of the funds levied from his Morgan Stanley account, but the IRS already refunded Plaintiff the $92,955.90 levied from that account, plus $4,123.89 in interest, making this claim moot. Compl. Ex. A; see Haas v. United States, 83 A.F.T.R. 2d 99-408 (Fed. Cl. 1998) (finding plaintiff's refund claim moot, where "the objective of plaintiff's suit, a refund of the monies representing her disallowed losses" had been achieved).

---

provide any evidence challenging the accuracy of the distributions reported by third-party financial institutions.

[9] In any event, even assuming a valid and timely refund claim, the amount of tax that the IRS would be permitted to refund Plaintiff would be subject to the "categorical limitation" in Section 6511(b)(2)(A), referred to as the "look-back" provision. See Diamond, 107 Fed. Cl. at 707 n.6. As the Court in Diamond explained, "[u]nder Subsection 6511(b), plaintiffs may obtain a . . . refund not exceeding the portion of the taxes paid within three years of making the claim." Id. Because Plaintiff paid the $46,697.17 tax liability via levy on September 15, 2009, Plaintiff could only have recovered that amount by filing a valid refund claim no later than three years from that date. This "look-back period limitation is a constraint on remedy, not jurisdiction." Id. (citing (Murdock v. United States, 103 Fed. Cl. 389, 394 (2012)).

9

Plaintiff does not articulate why he is entitled to any additional refund. To the extent that Plaintiff seeks damages stemming from the IRS's placement of a levy on his bank accounts as an unauthorized collection, the district courts of the United States have exclusive jurisdiction over such claims. See 26 U.S.C. § 7433; Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002). The "specific grant of jurisdiction to district courts to hear damage claims arising out of the IRS's collection activities obviates any possible jurisdiction [the Court of Federal Claims] might otherwise have." Tiernan, 113 Fed. Cl. at 534.

## Conclusion

Defendant's motion to dismiss is **GRANTED**. The Clerk is directed to dismiss this action for lack of subject-matter jurisdiction.

_/s/ Mary Ellen Coster Williams_
**MARY ELLEN COSTER WILLIAMS**
**Judge**